*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ROBERTS, Minors.

UNPUBLISHED
September 29, 2022

Nos. 359208; 359210
Wayne Circuit Court
Family Division
LC No. 2007-471803-NA

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

Respondents appeal by right the trial court's order terminating their parental rights to the minor children, ER and NR, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

## I. FACTS AND PROCEEDINGS

Respondent-mother has cerebral palsy, which impairs her physical mobility but not her cognitive function. Respondent-father has a closed-head injury caused by a gunshot wound to his head. Respondent-mother's parental rights to another child were voluntarily relinquished in 2007 after the initiation of child protective proceedings. When ER was born in 2017, his meconium tested positive for cocaine exposure. Children's Protective Services visited respondents' home after ER's birth. During the first visit, respondent-father would not allow the worker into the home. At the second visit, respondent-father was visibly intoxicated, and respondents did not have supplies to care for a newborn child.

ER was removed from the home and initially placed with a relative. Petitioner filed a petition requesting that the court exercise jurisdiction over ER and terminate respondent-mother's parental rights at the initial disposition. While that petition was pending, NR was born in 2018, and an amended petition was filed to add NR to the proceedings. The trial court found sufficient evidence to exercise jurisdiction over the children, but it declined to terminate respondents' parental rights and ordered petitioner to provide reunification services. Respondents were ordered to participate in individual therapy, substance abuse therapy, drug screening, and parenting classes. They were also required to establish suitable housing and obtain lawful income, along with being required to undergo psychological evaluations.

-1-

Oakland Family Services provided foster care services. Supervised visitation was held at the agency office in Pontiac, which was inconvenient for respondents because they lived in Detroit. Respondents later moved to a boarding house in Pontiac, but they missed approximately half of the scheduled visits with the children. When they did attend visits, they acted appropriately with the children. Respondents completed parenting classes, but they missed most drug screens, failed to participate in therapy, and failed to complete psychological evaluations. Respondents attributed their poor compliance with services to a lack of transportation. Petitioner gave them bus passes, but respondent-mother was not able to walk to the bus stop. Respondents also complained that there were no bus routes to the locations of their services. Oakland Family Services did not provide other transportation resources, but respondent-mother's parent-partner from Judson Center gave her gift cards for Uber and Lyft ride-share services. Both respondents were unemployed, but respondent-father received Social Security disability benefits for his head injury. Respondent-mother applied for Social Security disability benefits, but her application was denied.

In February 2021, petitioner filed a supplemental petition to terminate respondents' parental rights because of their failure to benefit from services. Following a hearing, the trial court found that clear and convincing evidence supported termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and it further found that termination of respondents' parental rights was in the children's best interests. Both respondents now appeal.

## II. DOCKET NO. 359208 (RESPONDENT-FATHER)

Respondent-father first argues that petitioner failed to accommodate his disability when providing reunification services. This issue challenges the trial court's finding that petitioner made reasonable efforts to reunify respondent-father with his children. We review the trial court's findings in termination cases for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, does not provide a defense to proceedings to terminate parental rights, *In re Terry*, 240 Mich App 14, 24-25; 610 NW2d 563 (2000), but it requires petitioner to reasonably accommodate a disabled parent when providing services to achieve reunification and avoid termination of parental rights. *In re Hicks*, 500 Mich 79, 86; 893 NW2d 637 (2017), citing 42 USC 12132 and 28 CFR 35.130(b)(7). Petitioner's obligations under the ADA dovetail with its affirmative duty under Michigan's Probate Code "to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich at 85-86, citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Failure to make reasonable efforts toward reunification may prevent petitioner from establishing statutory grounds for termination. *In re Newman*, 189 Mich App 61, 65-68; 472 NW2d 38 (1991). But if a parent is simply unable to meet the needs of his child, then "the needs of the child must prevail over the needs of the parent." *In re Terry*, 240 Mich App at 28 (quotation marks and citation omitted). The ADA does not require petitioner to provide a parent "with full-time, live-in assistance" with the children. *Id.* at 27-28. In order to prevail on an argument that petitioner's reunification efforts were inadequate, a respondent must demonstrate that he would have fared better if sufficient services were offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). The parent should also identify the services that petitioner should have

provided to accommodate the parent's specific needs. *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021) ("mother has failed to identify what services the [petitioner] should have provided to accommodate her specific needs").

Respondent-father never came forward with information about how his closed-head injury impaired his ability to benefit from the parenting classes, therapy, and substance abuse services offered to him. He testified regarding transportation problems, but he never indicated that his injury interfered with his ability to use public transportation or ride-share services. Respondent-father's testimony that he missed drug screens because the waiting time was too long and the open hours were too limited does not establish a link between his disability and his noncompliance with services. Further, although respondent-father complains that petitioner did not know the nature of his disability, he failed to complete a psychological evaluation that might have shed light on his deficits. Respondent-father provided only vague testimony regarding how his injury could impair his parenting. On appeal, respondent-father states that he has special needs, but he does not specify what those needs are or how they affected his ability to comply with services. In sum, respondent-father has failed to establish that petitioner's efforts at reunification were insufficient or inadequate under either the ADA or the Probate Code.

Respondent-father also argues that the trial court clearly erred by finding that a statutory ground for termination supported termination of his parental rights and by finding that termination of his parental rights was in the children's best interests. We disagree.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework for appeals challenging the statutory grounds for termination and the best-interests determination:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

The trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

-3-

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The children were adjudicated as temporary court wards because of respondents' substance abuse and because respondents were unprepared to care for a newborn. These problems were not resolved over the course of the proceedings. Respondent-father did not participate in therapy and did not comply with drug screening. He also missed approximately half of the scheduled visits with the children. Thus, the conditions that led to the adjudication were not rectified and, considering the length of time services were offered and respondent-father's failure to benefit from those services, there was no reasonable expectation that they would be resolved within a reasonable period of time. Therefore, the trial court did not clearly err by finding that clear and convincing evidence supported termination of respondent-father's parental rights under § 19b(3)(c)(*i*). Additionally, both respondents lacked suitable housing for most of the proceedings and by the end of the proceedings they were living together in one room at a boarding house in which they shared common areas with other residents, which was inappropriate for the children. Respondent-father's failure to obtain suitable housing for the children was a new condition that supported termination of his parental rights under § 19b(3)(c)(*ii*).

Further, considering respondent-father's unresolved substance abuse, failure to complete a psychological evaluation or therapy, and failure to establish housing, there was a reasonable likelihood that the children would be harmed if they were returned to his care. Therefore, the trial

-4-

court did not clearly err by finding that the evidence also supported termination of his parental rights under § 19b(3)(j).[1]

Next, with respect to respondent-father's argument that the trial court clearly erred by finding that termination of his parental rights was in the children's best interests, this Court in *In re Mota*, 334 Mich App at 321, observed:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

In addition, a trial court may consider a parent's substance abuse problems in its best-interests analysis. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). Also, a child's placement with relatives weighs against termination and thus constitutes "a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine [a child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

The trial court's decision regarding the children's best interests is supported by the evidence that respondent-father not only failed to participate in services to address his parenting deficiencies, he also failed to consistently visit the children when afforded the opportunity to do so. Respondent-father attended only about half of the offered visits. And his failure to participate in drug screens was troubling. The caseworker testified that the children had a bond with respondent-father, but it was not a strong bond because they only saw him during visits, which were inconsistent and sporadic. Although the children appeared to enjoy their visits with him, they did not look to respondent-father as a parent who would provide support and protection. Respondent-father's low level of commitment to parenting supported the trial court's best-interest decision.

Respondent-father also contends that the trial court clearly erred by failing to consider a guardianship with his sister as an alternative to termination. In *In re Affleck/Kutzleb/Simpson*, 505 Mich 858; 935 NW2d 316 (2019), our Supreme Court denied the respondent-parent's application for leave to appeal, but it vacated "that part of the judgment of the Court of Appeals addressing the trial court's best-interest determinations," remanding the case to the trial court "for

---

[1] Because only one statutory ground need be established to support termination, we find it unnecessary to address § 19b(3)(g).

reconsideration of whether terminating respondent's parental rights is in the best interests of each child." The Supreme Court faulted the petitioner for not considering a guardianship for the children "because of a purported departmental policy against recommending guardianship for children under the age of 10." *Id*. The Court concluded that "such a generalized policy is inappropriate" because it is not supported by any statutory language. *Id*.

At a February 9, 2021 review hearing, respondent-mother questioned the foster care worker regarding a discussion of guardianship at a family team meeting. The worker stated that she and her supervisor were not recommending a guardianship for the children, but that "we did explore it[,] [w]e did discuss it, but we don't feel it is in the best interest of the children." After noting that respondents had failed to resolve the problems that led to the children's removal, the worker explained:

> They [respondents] are very inconsistent with parenting time which is very confusing to the children. So, to maintain the relationship and have them in and out of their lives doesn't seem appropriate as – and on top of that, the relative as well as the foster parents are interested in adoption and the DHS policy that I sent you and Mr. Scott does state that we don't typically recommend guardianship for children that are their age.

At the termination hearing, respondent-father, citing *In re Affleck/Kutzleb/Simpson*, argued that petitioner could not reject a guardianship for a generalized policy reason. Petitioner argued that *In re Affleck/Kutzleb/Simpson* was distinguishable from this case because the caseworker here testified that a guardianship was considered. The trial court agreed that the testimony indicated that a guardianship was considered but that it was determined that it was not in the children's best interests. We agree with the trial court that petitioner did not automatically reject the option of a guardianship in reliance on a generalized policy. Rather, petitioner considered the children's ages, the foster parents' interest in adoption, and respondents' lack of consistency in their attention to the children in determining that a guardianship was not a preferable alternative to termination. The caseworker explained that a guardianship arrangement could be harmful to the children and not provide them with the permanence and stability they needed, considering respondents' failure to commit to being a consistent presence in their lives. That is, it would be better to sever the relationship rather than confuse the children with inconsistent and sporadic contact. This was a reasonable choice, especially when adoption, which would provide the children with permanence and stability, was a possibility. Therefore, the trial court did not clearly err by finding that termination of respondent-father's parental rights, as opposed to a guardianship arrangement, would better serve the children's best interests.[2]

## III. DOCKET NO. 359210 (RESPONDENT-MOTHER)

Respondent-mother argues that the trial court clearly erred by finding that the evidence supported a statutory ground for termination. We disagree.

---

[2] This issue does present a close call, and petitioner better take heed of *In re Affleck/Kutzleb/Simpson* moving forward.

Preliminarily, we disagree with respondent-mother's argument that petitioner did not adequately accommodate her need for special services because of her disability. Petitioner knew that respondent-mother's cerebral palsy limited her mobility, and it knew that she could not walk from her lodging to the bus stop. But respondent-mother admitted that she could make arrangements to use a SMART connector bus. She also received Uber and Lyft gift cards or tickets. Respondent-mother did not explain why these resources were inadequate to address her transportation issue. There was no evidence that her cerebral palsy otherwise limited her ability to comply with the treatment plan. Thus, respondent-mother has failed to demonstrate that petitioner's efforts at reunification were insufficient with respect to accommodating her disability.

The children were adjudicated as court wards because of respondents' substance abuse and because they were unprepared to care for a newborn child. These conditions continued to exist at the time of the termination hearing approximately four years later. Respondent-mother did not participate in therapy, missed many visits with the children, and failed to substantially comply with her drug screening. Thus, the conditions leading to the adjudication were not rectified and, considering respondent-mother's lack of progress over a four-year period, they were not reasonably likely to be rectified within a reasonable period of time. Accordingly, the evidence supported termination of respondent-mother's parental rights under § 19b(3)(c)(*i*). Additionally, by the end of the proceedings, both respondents were living together in one room at a boarding house in which they shared common areas with other residents, which was inappropriate for the children. Respondent-mother's failure to obtain suitable housing for the children was a new condition that supported termination of her parental rights under § 19b(3)(c)(*ii*).

Further, considering respondent-mother's unresolved substance abuse, failure to complete a psychological evaluation or therapy, and failure to establish housing, there was a reasonable likelihood that the children would be harmed if returned to respondent-mother's care. Therefore, the trial court did not clearly err by finding that the evidence also supported termination of respondent-mother's parental rights under § 19b(3)(j). As with respondent-father, it is unnecessary for us to address § 19b(3)(g) in relation to respondent-mother.

Finally, the trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the children's best interests. The trial court's decision is supported by the evidence that respondent-mother was afforded approximately four years to address her parenting deficiencies but was unable to do so. Moreover, respondent-mother attended only approximately half of the visits that were offered. The caseworker agreed that the children had a bond with respondent-mother. But the caseworker also stated that it was not a strong bond and that the children did not fully understand that respondent-mother was their biological mother. The children appeared to enjoy their visits with her, but they did not look to her as a parent who provided support and protection. Furthermore, as explained earlier, the trial court considered the guardianship option suggested by respondents, and it did not clearly err by finding that termination of respondents' parental rights, as opposed to a guardianship, was in the children's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel